The next case is Santander Bank v. Harrison. We can't hear. Ms. Harrison? Yes, can you hear me? Yes, we can hear you. Okay, thank you. I'd like to start now. I'm sorry. Please. Okay, may it please the court. I'm Angela Harrison, the appellate, and I'm here appealing a decision for, I filed a motion for, to dismiss a case in district court for strict foreclosure, for lack of statutory state and federal statutory requirements, for lack of compliance. I would like to do just a little quick synopsis of this case because it has been pending for like 13 years. And before this case was commenced in district court, I was in state court for six years. And in the process of that, as a result, I was awarded a trial date, which was for January 6th in 2016. And I was also awarded depositions for Santander Bank because I have been in communication with Santander Bank and they told me they do not have me in court. And subsequently, I got two letters in the year 2014 and 2015 stating that the people and Joanne Gruber did a research and found out that the only way my note had anything to do with Santander Bank was on a mortgage-backed security loan from Terwin Advisor. And that case was resolved in federal court for $42 million in Pennsylvania. So to make a long story short, the week of Thanksgiving in 2015, I'm waiting to do my depositions and I'm waiting for confirmation from Santander Bank and they withdrew the case. They withdrew the case the week of Thanksgiving on the 23rd, refiled the very next day in federal court. So they never filed any compliance with EMAP and the acceleration note and anything and they voluntarily withdrew that case. And they didn't file that till the strict foreclosure. So where the court erred and when they gave, first of all, I never had a hearing for a summary judgment. I never had any discovery. I asked for discovery. I compelled it. I never got any of those things. But they gave a summary judgment without a hearing. But in his articulation, which is the only articulation that this court gave, he states in the articulation that he uses the date from the 2010 case in Superior Court as his 30 days before it was filed prior to and he didn't, he never used anything. That's on, if you want to know, it's in my appendix on pages 63 through 77, but particularly page 75 and 76. And so the Supreme Court in Connecticut says, you know, that you cannot use old, if you're going to withdraw a case and then you're going to file a whole new one, you have to still follow the state and the federal statutory requirements. Santana did not do that. And it was almost, it's impossible that if you withdraw a case on the 23rd and refile it, a new case on the 24th, how can you do that? And I was never, my due process as a matter of them doing it that way, it took away my due process. It prejudiced my case because then I was thrusted into federal court, which meant I had 21 days. Thanksgiving was the 26th. I was served on the 27th. I had 21 days to get all the preliminary documents. Now I have to learn all the new federal appellate civil procedures, which I was not familiar with. That might be easy for an attorney. It was very difficult to now have to learn the federal rules of civil procedure. And so the only reference that the district court had for any requirements at all was he used a reference from the old case. And you just, I don't know. He never gave new law days when he was giving me, he kept giving me dates. He kept ordering because I kept trying to file for an appeal. And Ms. Harrison, you say that this EMAP notice and market sale notice are jurisdictional. We understand your argument from your briefing. You've reserved two minutes of rebuttal and we'll be back to you after we hear from Ms. Koch and your adversary. Okay. Thank you. Good morning, your honors, and may it please the court. My name is Adrian Koch. I am the court appointed neutral amicus curiae. And I was appointed to address the question of whether federal or state law applies to this dispute. It seems to me that there were three issues as to which that question arises. One is subject matter jurisdiction, which includes a sub question of when the action was commenced. The second is the applicability of rules 54 and 60. And the third is appeal ability. My plan was to address those issues in that order, unless there's something that the court would prefer that I address first. I'll go ahead. That's fine. Please proceed. Thank you, your honor. Everyone seems to agree, from what I can tell, that the EMAP notice required under Connecticut law is a predicate to subject matter jurisdiction and must be sent before the action is commenced and that the question of whether subject matter jurisdiction does or does not exist in that regard is governed by Connecticut law. The record, as far as I can tell, reveals a dispute over whether the notice was ever sent at all. I'm not going to comment on that dispute. Where there does appear to be an issue of federal versus state law that is still in dispute is that the bank concedes that the notice wasn't sent until after the action was filed, but asserts in its Rule 28J letter that this doesn't matter because under Connecticut law, the action was a legal melody until the pleading was served. I would point out in response to that, that under Connecticut law, filing happens after service. So something that must be done before service under Connecticut law is necessarily done before filing. But more importantly, I have to point out that the action was not a legal melody when it was filed. In fact, the complaint that the bank filed, admittedly before it served, before it mailed the EMAP notice, included a Liz Pendence. That appears on page 58 of Ms. Harrison's appendix. It has the caption of this action, and it says, notices hereby given of the pendency of a civil action, and it goes on to describe this action and the property at issue here. So the action was a cloud on title the moment it was filed, and I therefore respectfully submit that for EMAP purposes, commencement has to be measured by federal law. I'll go on to speak about Rules 54 and 60, unless the court has questions it would like me to address. OK. The order that the bank claims caused title to vest in it, the foreclosure judgment of strict foreclosure, is an order that this court expressly and repeatedly held was not final. That means that under Rule 54 it could be altered at any time. The bank argues that the Connecticut statute precludes this, but if it does, then it conflicts with Rule 54, and Rule 54 controls. That the rule doesn't specifically address the vesting of title as immaterial because it addresses the finality of the judgment. The finality of the judgment of strict foreclosure rendered by a federal court is governed by the federal rules, not Connecticut law. And under the Sibach-Hannah-Burlington analysis, Rule 54 applies unless the court finds that Rule 54 is invalid. And I don't think anyone is arguing that. The Supreme Court held in Sears that it's valid, so I think that's sort of done. The same is true about Rule 60. It governs, not Connecticut law. Rule 60 governs when a judgment of strict foreclosure rendered by a federal court can be reopened, and Connecticut law can't change that. The bank's argument would have the court hold that Rule 60 doesn't apply to a judgment of strict foreclosure under Connecticut law. But I would respectfully submit that that argument, too, is foreclosed by the Sibach-Hannah-Burlington analysis unless the court finds that Rule 60 is invalid. And I want to emphasize that this is not an Erie question. If you look at the Shady Grove decision, and I realize that that's a fragmented decision on which there isn't a majority of the court on some of the issues, but there is a portion that represents the holding of the court. And in that portion, the court says, we do not wade into Erie's murky waters unless the federal rule is inapplicable or invalid. That's on page 398 of the opinion, and as I said, that's the part on which Justice Scalia had the whole court. Under Hannah and Burlington, it doesn't matter how important the state rights are that are at stake. If they collide with the federal rule, the federal rule controls unless the rule itself is invalid. So under Rule 54, the judgment setting Ms. Harrison's law day was not final and was subject to revision at any time. I'll turn to the appealability question unless the court has questions on that. No, your overall argument is that we just do the two-step. Say whether the federal rule and the state rule conflict, answer the same question, and then whether they conflict with each other. And if they, unless the federal rule violates the Rules Enabling Act, it prevails in that context. That's correct, Your Honor. I just have a question. I understand that you're a neutral amicus, but what relief do you think is available to us today? What can we do? What should we do? Well, Your Honor, that actually dovetails quite nicely with the question of appealability, because the bank is arguing that the case is moot because title vested in it. And I guess to that I would say two things. The first is the court has before it the two parties who are claiming title, right? The bank and Ms. Harrison. There is not a question here that there's some third party that's got some vested rights. Although if there were, and it turned out that the bank incorrectly took title, Ms. Harrison might have a damage claim in that regard. But nobody's arguing that. The court has the two conflicting parties who both claim title before it, and it can make a determination as to who has title. This court does that all the time in cases where a district court determination decides title. The bank refers to a number of cases that were decided under a bankruptcy statute, 11 U.S.C. Section 363M, which specifically provides that in the absence of a stay, the reversal or modification of a bankruptcy sale order doesn't affect the validity of a sale authorized by the order, as long as it was a sale to a good faith purchaser. But I would respectfully submit that this actually proves the point. You need a statute to limit appellate jurisdiction in that way. And in the bankruptcy context, Congress enacted one. Connecticut can't enact a statute that limits the appellate jurisdiction of this court. And I think Shady Grove, again, in the part in which Justice Scalia has a court, also makes that clear at page 400. Congress can create exceptions to this court's jurisdiction. Connecticut cannot. So let me understand you. You're saying that if we agreed with you and found that there were various flaws in the taking of title by the bank, then we would have to declare that the title still remained in Ms. Harrison. Ms. Harrison. Correct, Your Honor. By virtue of the application of the federal rules and the federal statute governing the court's jurisdiction. I'm just wanting to be sure I understand what the conclusion with the thrust of your argument is. Yeah. Thank you. Thank you. We'll hear from the appellee. I believe you're on mute. Mr. Milne. Good morning, Your Honor. Jeff Milne to the appellee. I apologize. I want to point out the retained realty decision and its importance, particularly the trial court decision, which addresses some of the issues that are germane in this appeal. In retained realty, the district court after title vested was asked under Rule 54, whether it could open a foreclosure judgment after the vesting of title, not to divest title, but to amend the pleadings related to a deficiency judgment. And the district court judge in that case expressly identified Connecticut substantive state law interest under Connecticut General Statutes 4915 in respecting the vesting of title, but under Rule 54 was authorized to open the deficiency proceedings to allow an amendment to the pleadings. And I start with that point because under retained realty, there were law days that were set. Those law days were, in a sense, interlocutory because under the authority of retained realty, a foreclosure judgment in federal court, a strict foreclosure judgment is not final until not only the law days have been set, but a deficiency judgment has entered, and there has been an ejectment. And at that point, the proceeding would then be final. However, the Second Circuit affirmed in retained realty and specifically found that there was nothing wrong with the vesting of title, notwithstanding the fact that when title vested, that was not a final judgment for purposes of appeal. And to the best of my knowledge, retained realty is the authority on strict foreclosure judgments in the Second Circuit. With respect to the issue of the Emergency Mortgage Assistance Act notice, that notice was mailed. There are two affidavits in the court record that were available when the court addressed the motion to open that was filed post-vesting. The question was raised about the timing of the mailing by the amicus. Could you address that as well? Two things. One, is it the mailing or is the receipt that counts? And second, is the timing of the mailing relevant as I take it from the amicus argument that it is? Could you address both? Yes, if your honor, please. First of all, mailing is all that's required. There is no proof of delivery, and that's based on the Aurora versus Condren decision, which is cited in our brief 181 CONAP 248 in citations 276 to 278. Secondly, under the… with the court, the notices were mailed on November 24th of 2015. Under state law, an action is not commenced until it is served. And we cited cases that address that in a diversity action. The action itself is not pending or deemed to have been brought until it has been served on the defendant. So as a matter of law, the notices were sent. That's the key point, as I understand it, on which the amicus counsel disagrees with you. Can you address that? Yes, your honor. This is a state statute involving a state cause of action, and there would be no reason to apply federal rule three regarding commencement to a state statute involving an issue of state jurisdiction. Here, there is no question that the notice was mailed. There are two affidavits that are reflected on file that were on file for about a year prior to the entry of the judgment. And under the cases that we cited, which were the converse decision, as well as the United States Supreme Court decision, they all reference the fact that when it is a state-based cause of action and a state-based issue, that the state rule applies, and under Connecticut law, an action is not brought until it has been served. On the issue of conflicts, there are no conflicts under the federal rules between 4915 and Rule 54 and Rule 60. I would note that the decision from the district court that was affirmed by the Second Circuit and retained realty addresses what I will call the hybrid nature of the different types of interests. 4915 deals with the vesting of real property rights and involves state substantive law. And basically what the statute says is, once title is vested, the only way to divest title would be if the court lacked subject matter jurisdiction. We contend here that there was subject matter jurisdiction based on the EMAP affidavits that were filed with the court. And I will note that at the judgment hearing, the borrower did not raise anything with respect to the EMAP notice, nor was any issue with respect to the EMAP notice raised until after title invested and a post-judgment motion had been filed. We've noted that there is a presumption of the validity of judgments in both state and federal court. And here, when the trial judge was faced with a post-judgment motion to open and using the authority under the Steiner case, there was ample evidence within the record that there was compliance with EMAP, and therefore, there was state-based jurisdiction for the court to deny the motion to open. And we would submit that the concern about appealability needs to be looked at in a narrow lens. Here, this borrower is getting her appellate rights adjudicated because she has raised an issue with respect to subject matter jurisdiction. And so within the confines of that, there is appellate review because the court is examining whether there was jurisdiction to enter the underlying judgment. I would submit that based on our brief in the Steiner case, the borrower cannot meet her burden of proof that the judgment itself was void because there's ample evidence within the record of compliance with the Emergency Mortgage Assistance Act. And I would rest on our brief. I have some further questions from the court. Thank you. We'll hear rebuttal. Ms. Harrison, you have two minutes. Yes, I would like to state that, number one, because they do not enter the EMAP information until they get foreclosure, it was never presented. But when it was, I took it to the post office to see if this information was ever sent. I have a letter from the postmaster, which is in my appendix. And clearly, I was in his office for four hours, and he did everything looking it up, had his other supervisors to look it up. It was never even sent. It was never sent. It was never entered into their system. And as a result of people like me questioning the documents that are coming into court and being used to get property, they have since changed that, where you can't just walk in and just grab it, the stuff that is saying that it's certified. So the mail was never certified. And also, in the same case that he quoted, they also say that your jurisdiction will be taken from you if you do not prove compliance. You can't just say, oh, I mailed it, and you have no evidence to show that you mailed it. I was in touch in 2015. I was in touch with Santander Bank, who I was getting ready to depose. When I was going to depose them, it was not for EMAP. It was for them coming to my deposition to say that we have nothing to do with your case. It is the bank doesn't ordinarily give out letters like that. They had to go sit before their board and their commission in order to be able to send me those letters. So I was in touch with Santander Bank, but it was not for EMAP. And by the way, in the state case, I was a perfect candidate for EMAP, had it been told to us. It was Congress and it was the House of Representatives and the Senate that invoked this bill because of all the fraud that was going on, because they were stealing homes and so much ruthlessness was going on throughout the court system. They had to do something. And the statute doesn't simply say, oh, you sent it, that's good enough. No. I was supposed to get a due process of having time to look at my assets, see what is going on, what can I do, how can I move, what to do. I was never afforded that. But the judge acknowledged that that is what should have happened because he said it in his articulation for the 2010 case. So he acknowledges and admits that, yes, she had 30 days to try to figure out something and she didn't contact them. She didn't do this. She didn't do that. I never had that because they withdrew on the 23rd, refiled on the 24th. I'm a pro se litigant. I had to learn all the federal rules of procedure to know how to move in this predicament. And so there are plenty of cases that state that it is precedence, that this has to be done precedence to any type of filing. Thank you. Thank you, Ms. Harrison. Your brief is very helpful and I think we understand your argument. And thank you to the amicus. Appreciate the help. And we will take the matter under advisement. Thank you. So that is the last case to be argued on the calendar this morning. So I will ask the clerk to adjourn court. Court stands adjourned. Thank you.